## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CYNTHIA GRABOWSKI,

                    Plaintiff,                    CASE NO. 15-12318
                                                  HON. DENISE PAGE HOOD
v.

QBE AMERICAS, INC., and
QBE HOLDINGS, INC. REGULAR
OR LIMITED TERM MEMBERS
GROUP MEMBER BASIC LIFE
INSURANCE PLAN,

                    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT [#28]

## I.      BACKGROUND

This lawsuit was originally filed on June 26, 2015 by Plaintiff Cynthia Grabowski ("Grabowski"), individually and as the Personal Representative of the Estate of Terence G. Grabowski. (Doc # 1) On July 13, 2016, Grabowski filed an Amended Complaint against Defendants QBE Americas, Inc. and QBE Holdings, Inc. Regular or Limited Term Members Group Member Basic Life Insurance Plan alleging four counts: Violation of the Americans with Disabilities Act ("ADA") (Count I), Breach of Fiduciary Duty under the Employee Retirement Income Security Act ("ERISA") (Count II), Wrongful Termination under ERISA (Count

1

III), and Wrongful Refusal to Pay Life Insurance under ERISA (Count IV).  (Doc # 21)  On November 10, 2016, Defendants filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment.  (Doc # 28)  A Response and Reply have been filed.  (Doc # 39; Doc # 42)  The Court held a hearing on January 25, 2017.  Grabowski filed additional exhibits for her Response on February 2, 2017.  (Doc # 43)

Decedent Terence Grabowski was a senior claims adjuster for QBE Americas, Inc. since June 2011.  In March 2014, he was placed on a Work Performance Plan.  (Doc # 28-3)  As of May 29, 2014, Terence Grabowski and his supervisor had met six times to discuss his progress.  (Doc # 39-5)  His supervisor indicated in an e-mail that he saw noticeable improvement and believed that Terence Grabowski had things under control and understood expectations.  *Id.*

In July 2014, Terence Grabowski made QBE aware that he was seeking medical treatment after beginning to experience short-term memory loss.  He requested leave as a reasonable accommodation to attend to medical appointments to have his condition diagnosed.  (Doc # 39-6; Doc # 39-9)  In response, QBE requested that his doctor fill out a form furnished by QBE titled, "Request for Information:  Americans with Disabilities Act."  (Doc # 34-1)  This form, dated July 25, 2014, states as follows:

> Terence has brought it to our attention that he has been
> seeing a doctor for memory issues/episodes of

> forgetfulness.   Terence has been missing important
> deadlines, has issues with paying attention to detail, has
> not been maintaining his claims files appropriately and is
> often not responsive to requests from his manager.  We
> are concerned for his well-being while at work.  We have
> observed that his performance level is not where it needs
> to be.  Terence is a Senior Claims Specialist – Property
> and performs most of his work in his cubicle at his desk
> on the phone and on a computer.   Given the above
> information, we need to determine any reasonable
> accommodations that we can make to restore him to an
> acceptable level of performance.

*Id.* at 679.

In August 2014, his doctor completed the form noting that Terence
Grabowski was being referred to a neurologist for further evaluation and diagnosis.
*Id.*  The doctor noted a possible need for medication pending further evaluation.
*Id.* at 680.  In response to the question "What is the nature of the employee's
condition to the extent that such condition may affect the employee's ability to
perform the functions of his job?," the doctor responded:  "minimal; but beginning
to be an issue + progressing."  *Id.*  The doctor opined that Grabowski was not
limited in any major life activities other than working.  *Id.*  QBE included a
suggested list of accommodations for Terence Grabowski on the form, and asked
his doctor to comment on them:

> Suggested Terence make a 'To Do' checklist at the
> beginning of each work day to list all of the tasks that
> need to be completed that day.

> Suggested Terence restructure his day into segments (for example, setting specific times to answer emails, make follow-up phone calls, check file notes, etc)
>
> Provided information on the suggested prioritization of work tasks and important deadlines that need to be met
>
> Suggested Terence add calendar reminders on his Outlook at the beginning of each work day to ensure he goes through the status of each claim or other task he is handling

*Id.* at 681. The doctor agreed with the suggested list of accommodations and opined that Terence Grabowski could perform all of his essential job responsibilities without any other accommodations. *Id.* Grabowski asserts that this form was returned to QBE in August 2014. On August 12, 2014, Terence Grabowski informed QBE via e-mail that his appointment with the neurologist was scheduled for September 29, 2014. (Doc # 39-8)

Terence Grabowski was terminated on September 11, 2014, which Defendants allege was for performance issues. He was 63 years old at the time. Grabowski claims that he was never given the option to take a leave of absence until his medical condition could be determined. In October 2014, a neurologist diagnosed Terence Grabowski with early onset Alzheimer's Dementia, and he was started on medication. (Doc # 39-10; Doc # 39-9, Pg ID 787) Grabowski claims that, after applying to dozens of companies with no response, Terence Grabowski

talked to QBE about short-term and long-term disability but was told that he was

not eligible because he was no longer an employee.

In December 2014, Terence Grabowski filed a charge of discrimination with

the EEOC, stating as follows.

> On March 25, 2014, I was placed on a Management Plan.
> On July 25,  2014, I advised my employer of my medical
> condition and requested leave as a reasonable
> accommodation.   On this same date the HR manager
> emailed me a "Request for Information: Americans with
> Disabilities Act" to have completed by my physician.  On
> August 12, 2014 my physician provided my employer
> with documentation in response to my request for a
> reasonable accommodation. My requests were denied.
> There is an accommodation that would allow me to
> continue employment and not an undue hardship for the
> employer.  On September 11, 2014, I was terminated.

(Doc # 39-6, Pg ID 771)   Terence Grabowski also submitted a Supplemental

Questionnaire to the EEOC, dated December 10, 2014, indicating that he could not

perform the major duties of the claims adjuster position with or without an

accommodation, and that he did not ask for an accommodation.  (Doc # 29-4)  On

April 2, 2015, the EEOC issued a Dismissal and Notice of Rights.  (Doc # 28-9)

In April 2015, Terence Grabowski filed for Social Security Disability.  (Doc

# 39-14)  His request was denied because his condition was not severe enough to

keep him from working.  *Id.* at 805.  In May 2015, Terence Grabowski submitted a

claim for short-term and long-term disability benefits through QBE.  He also

submitted documentation from his neurologist, dated May 22, 2015, stating that he

was terminated before the neurologist was able to first see him in September 2014. (Doc # 29-2)  The neurologist did not support Terence Grabowski returning to work at that time even with accommodations.  *Id.* at 336.

Terence Grabowski died on May 23, 2015 from a heart attack.  (Doc # 39-15)  After filing this litigation in June 2015, Grabowski was notified that the claim for long-term disability benefits was approved.  (Doc # 39-17)  Cynthia Grabowski subsequently filed a claim for life insurance proceeds through QBE, but the claim was denied and the denial affirmed through administrative appeals.  (Doc # 39-18; Doc # 39-19; Doc # 39-20)  The Principal determined that Terence Grabowski was not eligible for life insurance coverage because:  (1) he did not become Totally Disabled prior to attaining the age of 60, as required by the Policy; and (2) he did not convert his group life insurance policy to an individual policy after he was terminated.  (Doc # 29-5, Pg ID 397)

## II.    ANALYSIS

### A. Standard of Review

The parties cite both Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedures.  The parties also rely on several exhibits not attached to the Complaint.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  This type of motion tests the legal sufficiency of the plaintiff's

complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe

the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v.*

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  A court, however, need not accept as

true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v.*

*Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)).  "[L]egal conclusions

masquerading as factual allegations will not suffice." *Edison v. State of Tenn.*

*Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  As the Supreme

Court has explained, "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do.  Factual allegations must

be enough to raise a right to relief above the speculative level… ." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v.*

*Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007).  To survive dismissal, the plaintiff

must offer sufficient factual allegations to make the asserted claim plausible on its

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "A claim has facial plausibility

when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.*  The court primarily

considers the allegations in the complaint, although matters of public record,

7

orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof

8

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248. The nonmoving party's version of the facts must be relied upon unless blatantly contradicted by record evidence. *Scott v. Harris*, 550 U.S. 372, 378, 380-81 (2007).

**B. Judicial Estoppel**

Defendants first argue that the doctrine of judicial estoppel precludes Grabowski from contending that Terence Grabowski was denied a reasonable accommodation, and so the Court should grant Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on the ADA claim. Defendants note that Terence Grabowski signed a supplemental questionnaire stating under penalty of perjury that he was unable to perform his job duties with or without reasonable accommodation and that he never requested an accommodation. *See* Doc # 29-4. Defendants also argue that "irrefutable" evidence in this case shows that Terence Grabowski was unable to work with or without accommodation immediately following his termination.

Grabowski responds that, at minimum, there is a genuine issue of material fact to preclude summary judgment because, on that same day, Terence Grabowski

stated just the opposite on his formal Charge of Discrimination.  *See* Doc # 39-6, Pg ID 771.  Grabowski argues that the medical documentation that Defendants rely on does not establish that Terence Grabowski was unable to work at the time of his termination.

Defendants rely on *Morales v. State Farm Mut. Auto. Ins. Co.*, 279 Mich. App. 720 (2008).   In *Morales*, the defendants argued that the plaintiff was judicially estopped from asserting a claim for work-loss benefits because he had successfully asserted a claim for veteran disability benefits based on causes unrelated to the ones that were at issue.  *Id.* at 736.  The court addressed the plaintiff's prior position before an administrative agency, Veteran Affairs, explaining that

> [t]he doctrine of judicial estoppel is intended to maintain the consistency of court rulings and to keep litigants from playing fast and loose with the legal system.  Under the doctrine of judicial estoppel, a party who has *successfully and unequivocally* asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.

*Id.* at 736–37 (internal quotations and citations omitted) (emphasis added).  The court found that judicial estoppel did not apply because the prior position that the plaintiff took before Veteran Affairs was not wholly inconsistent with his position in claiming the no-fault benefits that were at issue.  *Id.* at 737.

In this case, Terence Grabowski filed a charge of discrimination with the EEOC stating that he requested leave as a reasonable accommodation, that his request was denied, and that this accommodation would have allowed him to continue working.  (Doc # 39-6, Pg ID 771)  On the same day, Terence Grabowski submitted a supplemental questionnaire to the EEOC, checking off two boxes to indicate that he could not perform the major duties of the claims adjuster position with or without an accommodation, and that he did not ask for an accommodation. (Doc # 29-4).   On April 2, 2015, the EEOC issued a Dismissal and Notice of Rights.  (Doc # 28-9)  This Notice indicates only that the EEOC was unable to conclude that the information obtained established violations of the statute, and that that no finding was made as to any issue that might be construed as having been raised by the charge.  *Id.*

As the court explained in *Morales*, "[u]nder the 'prior success' model, the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true."  279 Mich. App. at 737 (citing *Paschke v. Retool Indus.*, 445 Mich. 502, 510 (1994)).  The Court finds that there is no indication in this case that the EEOC accepted Terence Grabowski's position on the supplemental questionnaire, as opposed to his position on the formal charge of discrimination, as

true.  The Court concludes that the doctrine of judicial estoppel has no application to the facts of this case.

### C. *Prima Facie* Case Under the ADA

Defendants next argue that Grabowski cannot establish a *prima facie* case under the ADA, and so the Court should grant Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on the ADA claim.  Grabowski responds that she has stated a *prima facie* case under the ADA and that there are genuine issues of material fact to preclude summary judgment.

The ADA provides that

> [n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  An employee may prove disability discrimination using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):  "the employee has the initial burden of establishing his *prima facie* case; if he does so, the burden shifts to the employer to articulate a

legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427, 433 (6th Cir. 2014).

To make out a *prima facie* case under the ADA, the plaintiff must establish by a preponderance of the competent evidence that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Id.* at 433.

**1. Disabled Within the Meaning of the ADA**

Under the ADA, a disability is defined as follows.

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

> (B) a record of such an impairment; or

> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). The term "disability is to be "construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms" of the

13

statute.  *Id.* at § 12102(4)(A).  The term "substantially limits" "means an inability to perform or a significant restriction on the ability to perform as compared to the average person in the general population."  *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998).  "Major life activities" include concentrating, thinking, and working, as well as the operation of a major bodily function, including neurological and brain functions.  42 U.S.C. §§ 12102(2)(A)-(B).

Defendants argue that Grabowski has failed to allege facts to show that Terence Grabowski was disabled within the meaning of the ADA, and failed to specify the alleged disability or any major life activity that was substantially impaired.  Defendants note that Terence Grabowski was not diagnosed with Alzheimer's until November 2014 and that his physician indicated in August 2014 that he had not been diagnosed with a specific condition and that his memory issues had a minimal impact on his ability to perform his job.

The Court finds that Grabowski has alleged sufficient facts to show that Terence Grabowski was disabled within the meaning of the ADA.  The Complaint alleges that he was experiencing short-term memory loss and was having difficulty completing work assignments in a timely and satisfactory manner.  (Doc # 21, Pg ID 99)  The Complaint further alleges that Terence Grabowski's doctor provided documentation to Defendants stating that Terence Grabowski needed further

14

evaluation from a neurologist with respect to his memory problems. *Id.* at 100. The documentation in the record, relied upon by both parties, show that Terence Grabowski had a mental impairment that significantly restricted his ability to perform his job, as compared to the average person in the general population, as well as the operation of his neurological functions. His doctor indicated on the documentation provided to QBE that Terence Grabowski's memory loss was "beginning to be an issue" and "progressing," and that he was being referred to a neurologist for further evaluation and diagnosis and may need medication. (Doc # 34-1, Pg ID 680) His doctor opined that Terence Grabowski was not limited in any major life activities *other than working*. *Id.* (emphasis added). Working is a major life activity, and per the statute, Grabowski need only establish that Terence Grabowski's disability substantially limited one major life activity. The fact that a formal diagnosis had not yet been made due to the timing of the appointment with the neurologist is of little consequence, and at most, it would create a genuine issue of material fact. *See Bracken v. DASCO Home Med. Equip., Inc.*, No. 1:12-CV-892, 2014 WL 4388261, at *9-10 (S.D. Ohio Sept. 5, 2014). The Court concludes that Grabowski has at this stage sufficiently established the first prong of her *prima facie* case.

### 2. Otherwise Qualified to Perform Essential Functions of the Job

Defendants argue that Grabowski cannot establish the second prong of her *prima facie* case, that Terence Grabowski was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation. Defendants argue that Terence Grabowski and his neurologist represented that he was unable to perform his job with or without reasonable accommodation, and that Terence Grabowski's application for disability benefits and representations to the EEOC are inconsistent with his ADA claim.

The Supreme Court has explained that the pursuit and receipt of disability benefits does not automatically estop an ADA claim or even erect a strong presumption against the success of an ADA claim. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797-98 (1999). However, an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of an earlier claim for disability benefits; rather, the plaintiff must proffer a sufficient explanation. *Id.* at 806.

> To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.* at 807.

16

The Court finds that neither Terence Grabowski nor his neurologist definitively represented that Terence Grabowski was unable to perform his job with or without reasonable accommodation *at the time of his termination on September 11, 2014*. The medical documentation from the neurologist that Defendants rely on is dated May 22, 2015, over eight months after the termination. At most, this shows that the neurologist opined that, on the day before Terence Grabowski died, he could not return to work with or without accommodation. (Doc # 29-2, Pg ID 336)   The same reasoning applies to Terence Grabowski's contradicting statements submitted to the EEOC in the formal charge and supplemental questionnaire in December 2014 (three months after his termination), his application for Social Security Disability in April 2015 (seven months after his termination), and his claim for short-term and long-term disability benefits in May 2015 (eight months after his termination).   Grabowski alleges that Terence Grabowski applied for these disability benefits because QBE terminated him without providing reasonable accommodation or granting him the requested leave time.   Grabowski's position is supported by the medical documentation from Terence Grabowski's physician submitted to QBE the month before the termination, which states that his doctor agreed with the suggested list of accommodations and that Terence Grabowski could perform all of his essential job responsibilities with those accommodations.   (Doc # 34-1, Pg ID 681)   The Court

finds that a reasonable juror could conclude that Terence Grabowski could perform the essential functions of his job with reasonable accommodation at the time of his termination on September 11, 2014. The Court concludes that Grabowski has at this stage sufficiently established the second prong of her *prima facie* case.

### 3. Adverse Employment Action Because of Disability

Defendants argue that Grabowski cannot establish the third prong of her *prima facie* case, that Terence Grabowski suffered an adverse employment action because of his disability. Defendants argue that Grabowski cannot establish that Defendants had the requisite knowledge of Terence Grabowski's disability to establish causation. Defendants assert that Terence Grabowski merely informed QBE that he was experiencing signs of memory loss, and that Terence Grabowski's doctor did not diagnose or describe any disability.

An employee cannot be considered to have been fired on the basis of disability unless the employer had knowledge of that disability. *See Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 365 (6th Cir. 2013) (unpublished). "An employer knows of a disability when an employee tells the employer of his or her condition. The employer need only know the underlying facts of the condition . . . the employee need not label his condition as a disability." *Hammon v. DHL Airways, Inc.*, 980 F. Supp. 919, 922 (S.D. Ohio 1997), *aff'd*, 165 F.3d 441 (6th

Cir. 1999) (internal quotations and citations omitted); *see also, Bracken*, 2014 WL 4388261, at *12-13.

The Court finds that Grabowski has presented sufficient evidence from which a reasonable juror could conclude that QBE had knowledge of Terence Grabowski's disability, and the fact that his condition had not been officially diagnosed or labeled a disability is not dispositive.  As indicated by QBE itself on its own "Request for Information:  Americans with Disabilities Act" form, Terence Grabowski brought his memory issues to QBE's attention in July 2014.  (Doc # 34-1, Pg ID 679)   The form goes on to list symptoms that QBE was aware of:  "Terence has been missing important deadlines, has issues with paying attention to detail, has not been maintaining his claims files appropriately and is often not responsive to requests from his manager.  We are concerned for his well-being while at work."  *Id.*  Terence Grabowski's doctor then filled out that form and indicated that further evaluation by a neurologist was need for a diagnosis, that there was a possible need for medication, that the condition was "beginning to be an issue" and "progressing," and that the doctor agreed with the suggested accommodations.  *Id.* at 679-81.  Defendants concede that they received this form filled out by the doctor before the termination; indeed, they rely on it for several of their arguments.  Also in the record is an e-mail, dated August 12, 2014, from Terence Grabowski to QBE informing them that his appointment with the

19

neurologist had been scheduled for September 29, 2014.  (Doc # 39-8)  The Court concludes that Grabowski has at this stage sufficiently established the third prong of her *prima facie* case.

For the reasons set forth above, the Court concludes that Grabowski has established a *prima facie* case under the ADA.

### D. Pretext Under the ADA

Having decided that Grabowski has established a *prima facie* case under the ADA, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for terminating Terence Grabowski.  Defendants assert that QBE fired Terence Grabowski because of his ongoing performance problems, including his difficulty completing assignments in a timely manner, mistakes in his work product, missed deadlines, and failure to follow up.  Therefore, the burden shifts back to Grabowski to demonstrate that QBE's purported reason for the termination is pretextual.

"Plaintiffs may show that an employer's proffered reasons for an adverse employment action are pretext for discrimination if the reasons '(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'"  *Demyanovich*, 747 F.3d at 431 (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)).

While the record shows that Terence Grabowski was placed on a performance improvement plan in March 2014, the record also contains two emails from his supervisor, dated May 9 and 29, 2014, noting "noticeable improvement." (Doc # 39-5, Pg ID 769)  His supervisor also indicated that Terence Grabowski had "things under control" and understood expectations.  *Id.*  Viewing the evidence in the light most favorable to the nonmoving party, as the Court is required to do at this stage, Grabowski's performance had greatly improved by the beginning of June 2014.  A few weeks later Grabowski first made QBE aware that he was seeking medical treatment after beginning to experience short-term memory loss in July 2014, and he requested leave as a reasonable accommodation.  QBE requested medical documentation, which Terence Grabowski's doctor provided to QBE the following month.  That documentation noted that further evaluation by a neurologist was need for a diagnosis, that there was a possible need for medication, that the condition was "beginning to be an issue" and "progressing."  (Doc # 34-1, Pg ID 679-81)  On August 12, 2014, Terence Grabowski informed QBE via e-mail that his appointment with the neurologist was scheduled for September 29, 2014. (Doc # 39-8)  He was terminated less than a month later, eighteen days before the scheduled appointment with the neurologist.  A few months later, Terence Grabowski filed a charge of discrimination with the EEOC, stating that his request for leave as a reasonable accommodation was denied.  The Court finds that, at

minimum, Grabowski has put forth enough evidence to create a genuine issue of material fact regarding whether the performance issues were sufficient to warrant the termination.

### E. Request for Reasonable Accommodation

Defendants' last argument regarding Count I of the Complaint is that Grabowski cannot establish that Terence Grabowski requested a reasonable accommodation that was denied. Defendants argue that Terence Grabowski had the opportunity to submit medical documentation supporting the need for a reasonable accommodation, and that Grabowski's doctor failed to identify leave as an accommodation.

Viewing the evidence in the light most favorable to the nonmoving party, Grabowski requested leave as a reasonable accommodation. In response, QBE requested that his doctor fill out the "Request for Information: Americans with Disabilities Act" form. (Doc # 34-1) In that form, the doctor indicated that his expertise was family medicine. *Id.* at 679. A subsequent question asked: "Have you referred the employee to a specialist or other care provider for the condition? If so, would the provider have more information on the employee's condition as related to the employee's ability to perform the functions of his position?" *Id.* at 681. The doctor responded, "Yes. Neurologist. Port Huron, MI." *Id.* (emphasis in

original).  The doctor also makes clear that further evaluation was needed and could shed light on Terence Grabowski's condition and further needs.  The Court is not persuaded by Defendants' argument that Terence Grabowski "was provided with the opportunity to identify 'any accommodation' which might be needed." Further evaluation by a neurologist was needed.  A referral was made and an appointment with a neurologist was scheduled.  Terence Grabowski informed QBE of the date of the appointment via e-mail on August 12, 2014, yet QBE terminated him some eighteen days before the scheduled appointment.  There is no evidence in the record showing that QBE granted Terence Grabowski's request for leave as a reasonable accommodation, even minimal leave to attend the scheduled neurologist appointment.  The Court concludes that there is a genuine issue of material fact regarding the alleged failure to accommodate.

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on the ADA claim (Count I).

## F.  Duplicative Breach of Fiduciary Duty Claim Under ERISA

Defendants argue that Grabowski's Breach of Fiduciary Duty claim under ERISA Section 502(a)(3) (Count II) should be dismissed as duplicative because it

requests the same thing as her Wrongful Refusal to Pay Life Insurance claim under ERISA Section 502(a)(1)(B) (Count IV). A review of the Complaint shows, and Grabowski does not dispute, that she seeks identical relief under Count II and Count IV—the full amount of disability benefits due, including interest on all unpaid benefits. (Doc # 21, Pg ID 104-06)

Grabowski cites a single district court case in which the plaintiff was allowed to bring claims under both Sections 502(a)(1)(B) and 502(a)(3) because the plaintiff was asking for a different remedy under Section 502(a)(3) beyond the unpaid benefits, including unanticipated costs for individual health insurance and other benefits. *See Englert v. Prudential Ins. Co. of Am.*, 186 F. Supp. 3d 1044 (N.D. Cal. 2016).

As the Sixth Circuit has explained, however,

> [a] claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate. . . . [T]he availability of relief under § 502(a)(3) is contingent on a showing that the claimant could not avail himself or herself of an adequate remedy pursuant to § 502(a)(1)(B).

24

*Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372-73 (6th Cir.), *cert. denied*, 136 S. Ct. 480 (2015) (emphasis in original). In *Rochow*, the court went on to find that the plaintiff had only alleged one injury, the denial of benefits. *Id.* at 374. The court concluded that the remedy available under Section 502(a)(1)(B)—"i.e., the recovery of benefits and attorney's fees and, potentially, prejudgment interest"—was adequate to make the plaintiff whole. *Id.* "The remedy Congress chose to make available under § 502(a)(1)(B) having thus not been shown to be inadequate, it follows that permitting [the plaintiff] to obtain further equitable relief for the same injury under § 502(a)(3) would contravene the scheme established by Congress. . . ." *Id.*

The Court finds that Grabowski has alleged only one injury, the denial of life insurance benefits. The appropriate avenue for Grabowski to recover any unpaid benefits and prejudgment interest under an ERISA plan is Section 502(a)(1)(B), not ERISA's catch-all provision. The Court grants Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on the Breach of Fiduciary Duty claim (Count II).

## G. Wrongful Refusal to Pay Life Insurance Under ERISA

Defendants argue that the Court should grant Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on the Wrongful Refusal to

Pay Life Insurance claim (Count IV) because the Principal's life insurance eligibility decision was not arbitrary or capricious.  Defendants argue that Terence Grabowski was not entitled to coverage under the plain terms of the "Coverage During Disability" provisions because he became Totally Disabled after the age of 60.  Defendants further argue his coverage terminated when he ceased Active Work, and that he had a right to convert the group coverage by purchasing an individual policy within 31 days of the termination, but that he chose not to exercise that right.  Defendants argue that, in her appeal, Grabowski did not challenge the reasonableness of the Principal's decision but rather took issue with the Policy itself.

Grabowski responds that Terence Grabowski never received notice of his right to convert the group policy to an individual policy, and that this was not addressed in the denial of Grabowski's appeal.  Grabowski also notes that, as a practical matter, it would have been impossible for Terence Grabowski to pay the premium for an individual life insurance policy after he was terminated. Grabowski seems to assert, without any argument, that the Court should review the denial of life insurance *de novo*.

The Court

reviews *de novo* an ERISA plan administrator's denial of benefits where the administrator has no discretion to

> determine benefits eligibility.  If an ERISA benefit plan
> gives the plan administrator discretionary authority to
> determine eligibility for benefits or to construe the terms
> of the plan, however, [the Court] review[s] a decision to
> deny benefits under an arbitrary and capricious standard
> of review.

*Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005) (internal

quotations and citations omitted).  This concept applies in the context of eligibility

for life insurance benefits.  *See Fendler v. CNA Grp. Life Assur. Co.*, 247 F. App'x

754, 758-60 (6th Cir. 2007) (unpublished).

The life insurance Policy at issue here gives the plan administrator such

discretionary authority.  Specifically, Article 9 of the Policy provides:

> The Principal has complete discretion to construe or
> interpret the provisions of this group insurance policy, to
> determine eligibility for benefits, and to determine the
> type and extent of benefits, if any, to be provided.  The
> decisions of The Principal in such matters shall be
> controlling, binding and final as between the Principal
> and persons covered by this Group Policy, subject to the
> Claims Procedure in PART IV, Section D.

(Doc # 29-5, Pg ID 506)   Accordingly, the Court reviews the denial of life

insurance benefits under the arbitrary and capricious standard of review.  Under

this standard, the Court determines whether, in light of the plan's provisions, the

plan administrator's decision was rational—that is whether it is possible to offer a

27

reasoned explanation, based on evidence, for the particular outcome.  *Calvert*, 409
F.3d at 292.

Generally, the Court reviews a denial of ERISA benefits based solely upon
the administrative record.  *Fendler*, 247 F. App'x at 757.  The only exception to
this principle arises when the consideration of new evidence is necessary to resolve
an ERISA claimant's procedural challenge to the administrator's decision, such as
an alleged lack of due process afforded by the administrator or alleged
administrator bias.  *Id.*  Grabowski's Complaint does not allege a lack of due
process or administrator bias.  Grabowski now alleges in its Response that she
never received notice of Terence Grabowski's right to convert the group policy to
an individual policy, and that this was not addressed in the denial of Grabowski's
appeal.  She relies on evidence outside of the administrative record and, although
discovery closed on January 9, 2017 (Doc # 37, Pg ID 712), argues that she is
entitled to additional discovery.  Defendants disagree.

Grabowski's after-the-fact procedural argument regarding a lack of notice
fails, and the Court must limit itself to the administrative record and will not grant
additional discovery.  Grabowski never made this lack of notice argument in
support of her claim during the administrative process.  In its initial denial letter,
the Principal outlined the information it had gathered and relied upon in making its

decision.  (Doc # 29-5, Pg ID 397-98)  That information included an "[e]mail to Mr. Grabowski on September 11, 2014 with Benefit Information for employees upon separation or retirement from the company attachment."  *Id.* at 398.  That email appears in the administrative record (sent to Grabowski's email address on the date of his termination), and the attachment includes information about Terence Grabowski's right to convert the group policy to an individual policy within 31 days of the separation date.  *Id.* at 477-84.  The Principal also made clear in its denial letter that Grabowski could appeal and submit additional evidence in support of her claim.  *Id.* at 398.  Grabowski, who was represented by Counsel, chose not to raise this notice argument in her administrative appeal, and she did not submit any evidence indicating that she had not received notice of the right to convert.  *Id.* at 389-92.  The Court concludes that Grabowski cannot now seek to "complete" the evidentiary record having failed to do so during her administrative appeal.

The Court next turns to a review of the denial of life insurance benefits under the arbitrary and capricious standard, based solely on the administrative record.  In its initial denial letter, the Principal determined that Terence Grabowski was not eligible for life insurance coverage because:  (1) he did not become Totally Disabled prior to attaining the age of 60, as required by the Policy; and (2) he did

not convert his group life insurance policy to an individual policy after he was terminated.  *Id.* at 397.  The Principal relied on the Policy provisions that follow.

The Policy defines a Member as an employee of the Policyholder "who regularly works at least 30 hours per week" and is compensated by the Policyholder.  *Id.* at 501.  A Member is considered "Actively at Work if he or she is able and available for active performance of all of his or her regular duties."  *Id.* at 499.   A Member's insurance under the Policy terminates on "the date the Member ceases Active Work."  *Id.* at 520.  However, a Member can qualify for "Coverage During Disability" if he becomes "Totally Disabled prior to the attainment of age 60."  *Id.* at 530.  Further, "if a Member qualifies and makes timely application, he or she may convert the group coverage by purchasing an individual policy of life insurance."  *Id.* at 525.  A Member qualifies for individual purchase if insurance under the Policy terminates and "the Member's total Life Insurance, or any portion of it, terminates because he or she ends Active Work or ceases to be in a class eligible for insurance."  *Id.*   "A Member must apply for individual purchase and the first premium for the individual policy must be paid to The Principal within 31 days after the date Member Life Insurance or Coverage During Disability terminates under this Group Policy."  *Id.* at 526.

It is undisputed that Terence Grabowski ceased to be an employee of QBE on September 11, 2014.  After that date, he was not regularly working 30 hours per week.  Terence Grabowski therefore did not meet the definition of a Member under the Policy and was not Actively at Work under the Policy.  His insurance under the Policy terminated on September 11, 2014, the day that he ceased Active Work.  It is undisputed that Terence Grabowski was 63 years old on the date of his termination.  He did not qualify for Coverage During Disability because he became Totally Disabled after age 60.  Indeed, according to the Complaint, he didn't even begin to experience symptoms of memory loss until "the early months of 2014," at which time he was already over the age of 60.  On the date of his termination, Terence Grabowski qualified for individual purchase, and he received an e-mail notifying him of his right to convert the group policy to an individual policy within 31 days.  It is undisputed that he did not exercise that right.  For these reasons, the Principal determined that life insurance benefits were not payable.  Grabowski, through Counsel, timely appealed the denial, arguing only that Terence Grabowski qualified for Coverage During Disability because the plan illegally discriminated on the basis of age.  The Principal subsequently affirmed the denial of benefits explaining that the Coverage During Disability Policy Provision did not treat Terence Grabowski differently than other members in his age class.  Grabowski does not make any argument related to age discrimination in the instant matter.

The Court concludes that, under these circumstances, the Principal's denial of life insurance benefits was not arbitrary or capricious. The Court grants Judgment in favor of Defendants on the Wrongful Refusal to Pay Life Insurance claim (Count IV).

## H. Wrongful Termination Claim Under ERISA

Defendants argue that Grabowski's Wrongful Termination under ERISA claim (Count III) should be dismissed because she failed to exhaust her administrative remedies, having not alleged during the administrative appeals process that QBE terminated Terence Grabowski to prevent him from receiving life insurance benefits. Defendants further argue that Grabowski cannot establish that QBE had the specific intent of avoiding ERISA liability when it terminated Terence Grabowski because his termination did not affect his eligibility for life insurance benefits.

Grabowski responds that there is no need for an administrative appeal in the context of an ERISA wrongful termination claim because the claim is of a violation of a statutory provision of ERISA, rather than a claim for benefits due

under an employee benefit plan.  Grabowski further argues that it is for the jury to decide whether Defendants acted with the intent to avoid the vesting of life insurance benefits.

The parties do not dispute that Grabowski did not argue that QBE terminated Terence Grabowski in order to prevent him from receiving life insurance benefits during the administrative appeals process.  The parties correctly note that the Sixth Circuit has yet to rule on the issue of whether administrative exhaustion is required under Section 510 of ERISA, and district court decisions have been inconsistent. *See Palagyi v. Pittsburgh & Conneaut Dock Co.*, No. 1:13-CV-01734, 2014 WL 619437, at *5-6, n.31 (N.D. Ohio Feb. 18, 2014); *Fitzgerald v. H & R Block Fin. Advisors, Inc.*, No. CIV 08-10784, 2008 WL 2397636, at *7 (E.D. Mich. June 11, 2008) (citing *Burds v. Union Pac. Corp.*, 223 F.3d 814, 817 (8th Cir. 2000)).  The Court need not decide this issue because Defendants' second argument is dispositive of Count III.

Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge . . . or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.

> To state a claim under § 510, the plaintiff must show that an employer had a specific intent to violate ERISA.  In

33

> the absence of direct evidence of such discriminatory intent, the plaintiff can state a *prima facie* case by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. . . . In order to survive [a] motion for summary judgment [the] plaintiff must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid [ERISA] liability was a determining factor in [the] plaintiff's discharge.

*Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997) (internal quotations and citations omitted).

While the Complaint alleges that Defendants wrongfully terminated Terence Grabowski intentionally to prevent him "from attaining or accruing rights and benefits due" under the life insurance Policy, there is no evidence from which a reasonable jury could conclude that his termination was motivated by a desire to interfere with his life insurance benefits.   As discussed above, after Terence Grabowski was terminated, he was still eligible for life insurance benefits under the Policy, provided that he converted his group policy to an individual policy within 31 days.   Also as discussed above, Terence Grabowski did not qualify for Coverage During Disability, before or after he was terminated, because he became Totally Disabled after age 60.   In other words, his termination did not in any way affect his eligibility for life insurance benefits.   The Court notes that, rather than argue that there was a causal link between the life insurance benefits and the

termination, Grabowski simply argues that Terence Grabowski was terminated because of his disability after he requested a reasonable accommodation.  The Court finds that Grabowski has not alleged facts or presented evidence to show a causal connection between Terence Grabowski's termination and his right to life insurance benefits. The Court therefore grants Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on the Wrongful Termination under ERISA claim (Count III).

## I.  Jury Trial on ERISA Claims

Defendants argue that Grabowski has no right to a jury trial on her ERISA claims.  Grabowski correctly notes that there is a split of authority on the issue of whether a plaintiff asserting a wrongful discharge claim under Section 510 of ERISA is entitled to a jury.  *See Vargas v. Child Dev. Council of Franklin Cnty., Inc.*, 269 F. Supp. 2d 954, 958 (S.D. Ohio 2003).  Grabowski concedes that she does not have a right to a jury trial on her other ERISA claims, but asserts, without any argument, that the Court should its exercise discretion and submit the ERISA claims to a jury for an advisory verdict under Federal Rule of Civil Procedure 39(c).  Given that the Court disposes of each of the ERISA claims, as discussed above, the Court need not reach these arguments.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants' Motion Dismiss or in the Alternative Motion for Summary Judgment (Doc # 28) is GRANTED IN PART as to Counts II, III, and IV.

IT IS FURTHER ORDERED that Defendants' Motion Dismiss or in the Alternative Motion for Summary Judgment (Doc # 28) is DENIED IN PART as to Count I.  Plaintiff's ADA claim remains.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 22, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager